UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

LESLIE WEHMEYER, and on behalf of all others similarly situated,

*Plaintiff*,

*v.*

KATI ELIZABETH TIKKANEN, a Florida resident, and USHEALTH ADVISORS, LLC, a Texas company,

*Defendants.*

No. 9:23-cv-81010-DMM

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Leslie Wehmeyer ("Plaintiff Wehmeyer" or "Wehmeyer") brings this Class Action Complaint and Demand for Jury Trial against Defendant Kati Elizabeth Tikkanen ("Tikkanen") and USHealth Advisors, LLC ("USHealth Advisors") to stop the Defendants from violating the Telephone Consumer Protection Act by placing calls and text messages to telephone numbers registered on the Do Not Call Registry without consent. The Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Wehmeyer, for this Complaint, allege as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by her attorneys.

## PARTIES

1. Plaintiff Wehmeyer is a resident of Mora, Missouri.

2. Defendant Tikkanen is a resident of Wellington, Florida who conducts business throughout this District and Missouri.

3. Defendant USHealth Advisors, LLC, is a limited liability company registered in Dallas, Texas and headquartered at Fort Worth, Texas. Defendant US Health Advisors conducts business throughout this District and Florida.

**JURISDICTION AND VENUE**

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendants because the unlawful conduct giving rise to this case was directed from this District by the Defendants to solicit business to consumers outside this District.

6. The venue is proper under 28 U.S.C. § 1391(b) because the Defendant Tikkanen is located in this District and the conduct giving rise to this case was directed from this District.

**INTRODUCTION**

7. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful robocalling technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 5.1 billion robocalls were placed in May 2023 alone, at a rate of 164.0 million per day. www.robocallindex.com (last visited June 22, 2023).

13. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

16. Defendant Tikkanen is a licensed health insurance agent with USHealth Advisors who does business from Florida throughout the U.S.[3]

17. Defendant Tikkanen uses unsolicited text messaging as a way to generate business for herself.

18. Tikkanen hides her full name and the name when sending unsolicited text messages, as per the text messages that Plaintiff received, in order to avoid being identified:




19. In response to these unsolicited text messages, the Plaintiff brings this case seeking injunctive relief requiring Defendants to cease from violating the Telephone Consumer Protection Act by sending unsolicited text messages to phone number registered on the DNC, as well as an award of statutory damages to the members of the Class and costs.

[3] https://licenseesearch.uid.utah.gov/s/agent?id=2071208

## PLAINTIFF WEHMEYER'S ALLEGATIONS

20. Plaintiff Wehmeyer is the subscriber and the sole user of the cell phone number ending with 1369.

21. Plaintiff Wehmeyer registered her cell phone on the DNC on March 29, 2007 and she uses it as one would use a residential landline.

22. Plaintiff Wehmeyer has owned her cell phone number for approximately 17 years.

23. On March 4, 2023 at 5:41 PM, Plaintiff Wehmeyer received an unsolicited text message to her cell phone from an insurance agent to her cell phone from 440-276-9140.

24. She then received a 2nd unsolicited text message from this agent on March 5, 2023 at 9:02 AM.

25. In response, Plaintiff texted "Discontinue" as per the instructions provided in the March 4 text on March 6, 2023 at 11:16 AM:




26. This 440-276-9140 phone number which sent out the text messages to the Plaintiff belongs to Defendant Kati Elizabeth Tikkanen.[4]

27. The unauthorized solicitations that Plaintiff Wehmeyer received from Defendant, as alleged herein, have harmed Plaintiff Wehmeyer in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of their phones, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

28. Seeking redress for these injuries, Plaintiff Wehmeyer, on behalf of herself and Class of similarly situated individuals, brings suit under the TCPA.

[4] From an email received by Plaintiff's attorneys during an investigation to find out who 440-276-9140 belongs to

## USHEALTH ADVISORS' VICARIOUS LIABILITY

29. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

30. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

31. The FCC has instructed that sellers such as USHealth Advisors may not avoid liability by outsourcing telemarketing to third parties, such as Tikkanen:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

32. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

33. USHealth Advisors is liable for telemarketing calls and texts placed by Tikkanen to generate customers for USHealth Advisors.

34. USHealth Advisors provides scripts for text messages to agents consistent with the content of Tikkanen's text messages to Plaintiff.

35. USHealth Advisors directs agents to state they are with USHealth Advisors when telemarketing.

36. USHealth Advisors authorizes agents to send text messages to consumers to solicit insurance sales.

37. USHealth Advisors authorizes agents to use a specific marketplace for leads that was used by Tikkanen to obtain Plaintiff's lead.

38. USHealth Advisors authorizes agents to use a specific text messaging platform for telemarketing that was used by Tikkanen to text message Plaintiff.

39. USHealth Advisors provides access to its propriety systems to Tikkanen to input information regarding insurance sales solicited through telemarketing.

40. USHealth Advisors provides access to its proprietary systems to Tikkanen to obtain pricing information to use to solicit insurance sales through telemarketing.

41. USHealth Advisors provided the specific criteria for the prospective customers it would accept and required its agents, including Tikkanen, to adhere to those criteria.

42. USHealth Advisors knew or reasonably should have known that Tikkanen was violating the TCPA on USHealth Advisors's behalf but USHealth Advisors failed to take effective steps within its power to cause them to stop.

43. In fact, USHealth Advisors monitors lawsuits against its agents and was the first to notify Tikkanen regarding the pendency of this lawsuit.

44. USHealth Advisors then located counsel for Tikkanen and has indicated that it will consider indemnifying Tikkanen for at least some of her defense costs in this action.

45. USHealth Advisors benefits from the sales made by Tikkanen through telemarketing without consent.

46. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## CLASS ALLEGATIONS

29. Plaintiff Wehmeyer brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Tikkanen called/texted more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Tikkanen called/texted Plaintiff.

30. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) either Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released.

Plaintiff Wehmeyer anticipates the need to amend the Class definition following appropriate discovery.

31. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and the Plaintiff is a member of the Class because she received text messages as part of the same telemarketing campaign resulting in text messages sent to other Class members.

32. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Tikkanen's conduct violated the TCPA;

(b) whether Tikkanen placed multiple calls/texts to Plaintiff and members of the DNC class without first obtaining consent to make the calls/texts;

(c) whether USHealth Advisors is liable for Tikkanen's conduct;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

33. **Adequate Representation**: Plaintiff Wehmeyer will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in class actions. Plaintiff Wehmeyer has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff Wehmeyer, and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff Wehmeyer, nor her counsel have any interest adverse to the Class.

34. **Appropriateness**: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Wehmeyer. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Wehmeyer and the Do Not Call Registry Class)**

35. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

36. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

37. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

38. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

39. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

40. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Wehmeyer, individually and on behalf of the Class, pray for the following relief:

a.) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Wehmeyer as the representative of the Class; and appointing her attorneys as Class Counsel;

b.) An award of actual and/or statutory damages and costs;

c.) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d.) An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e.) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Wehmeyer requests a jury trial.

**LESLIE WEHMEYER**, individually, and on behalf of all others similarly situated,

DATED this 8th day of November, 2023.

*/s/ Avi R. Kaufman*
Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
COLEMAN PLLC
66 West Flagler Sreet
Suite 900
Miami, FL 33130
(877) 333-9427
law@stefancoleman.com

*Attorneys for Plaintiff and the putative Class*